## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN JACOB BOGLEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | Civil Action No.   ADC-15-3105 |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| Acting Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

On October 13, 2015, John Jacob Bogley ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and each parties cross-motions for summary judgment (ECF Nos. 14, 15, 16), the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED, and the decision of the Social Security Administration is AFFIRMED.

### CASE BACKGROUND

On September 15, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. In both claims, Plaintiff alleged disability beginning on January 25, 2011. Both claims were denied initially and upon reconsideration on January 5, 2012 and June 25, 2012, respectively. Subsequently, on July 9, 2012, Plaintiff filed a written request for a hearing. On December 11,

2013, a hearing was held before an Administrative Law Judge. Following that hearing, on March 10, 2014, the ALJ rendered a decision denying Plaintiff's claims for DIB and SSI. *See* ECF No. 11. Thereafter, on May 1, 2014, Plaintiff requested review of the decision, and on August 17, 2015, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ at the hearing became the final decision of the Commissioner. See C.F.R. § 416.1481; see also *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On October 13 2015, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's final decision.[1] On May 19, 2016, Plaintiff filed a Motion for Summary Judgment. On July 19, 2016, Defendant filed a Motion for Summary Judgment. On August 7, 2016, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement, Defendant's Motion for Summary Judgment, and Plaintiff's Reply.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). However, the Court does not conduct a de novo review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a de novo review

---

[1] On August 31, 2016, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence."). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.").

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653 (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that he is under disability within the meaning of the Social Security Act. The term "disability," for purposes of the Social Security

Act, is defined as the "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such a severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that, "[i]f at any step a finding of disability or non-disability can be made, the [Commissioner] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the Commissioner considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

At step three, the Commissioner considers the medical severity of the impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the Code of Federal Regulations, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

At step four, the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

At steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Radford*, 734 F.3d at 291. At step five, the burden shifts to the Commissioner to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012); *See also Walls v. Barnhart,* 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

### ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found, at step one,

that Plaintiff did not engage in substantial gainful activity since the alleged onset date of January

25, 2011. ECF No. 11 at 27. At step two, the ALJ found that Plaintiff had the following severe

impairments: degenerative disc disease of the lumbar spine requiring fusion with instrumentation

at the L4-S1 vertebrae, post-laminectomy syndrome, obesity, depression/mood disorder, and

anxiety/post-traumatic stress disorder. *Id.* At step three, the ALJ further determined that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt P, App. 1. *Id* at 28. At step

four, the ALJ determined Plaintiff's residual functional capacity and concluded that Plaintiff was

unable to perform any past relevant work.[2] However, at step five, the ALJ determined that,

"[c]onsidering the claimant's age, education, work experience, and residual functional capacity,

there are jobs that exist in significant numbers in the national economy that the claimant can

perform." *Id.* at 34. Thus, the ALJ concluded that, "[a] finding of 'not disabled' is therefore

appropriate under the framework of the above-cited rule [Medical-Vocational Rule 202.21]." *Id.*

### PLAINTIFF'S ARGUMENTS RAISED

In the present case, the ALJ found at step four of the sequential evaluation that Plaintiff

had the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b) and

---

[2] ECF No. 11 at 29 ("[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that due to his physical impairments and related symptomatology, he is limited to work requiring no more than four hours of standing/walking per eight-hour day, which allows a sit/stand option at will with the proviso that he could stand and walk up to four hours total in an eight-hour workday if desired by him or required by the job. He could occasionally stoop, kneel, crouch, and crawl, could only frequently climb ramps/stairs, and could never climb ladders/ropes/scaffolds. The claimant must avoid concentrated exposure to extreme heat/cold, vibration, and hazards. Due to his mental impairments and associated deficits in social functioning, he is limited to occasional and superficial interaction with co-workers.").

416.967(b) with specific assigned limitations. Plaintiff contends that the ALJ erred when he: (1) failed to consider the findings and opinions of Dr. McAfee, Dr. Seligman, the State-Agency Physician, Mr. Martinez, Dr. DiCrisio, Mr. Melberg, Ms. Kradel, and Dr. Cohen; and (2) improperly relied on the testimony of a vocational expert who did not have the qualifications required by the Agency. In addition, Plaintiff contends that the Appeals Council erred in failing to consider Dr. McAfee's June 2014 letter in its decision to deny review of Plaintiff's claim.

### DISCUSSION

**A.  The ALJ properly evaluated the medical opinion evidence.**

Section 404.1527 of the regulations governs an ALJ's consideration of the medical opinion given by a treating source. See 20 C.F.R. § 404.1527(d). That regulation defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including ... what [the claimant] can still do despite impairment(s)...." 20 C.F.R. § 404.1527(a)(2). The regulations further explain that "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. See 20 C.F.R. § 404.1513(a)(1)-(5). Finally, the regulations provide that a medical source statement about what a claimant can still do despite his or her impairment(s) should be "based on the acceptable medical source's findings" that are supported by a combination of medical history, clinical findings, laboratory findings, diagnoses, and prognoses. See § 404.1513(b); see also SSR 96–5p, 1996 WL 374183, *4 ("Medical source statements are medical opinions submitted by acceptable medical sources.") (citing § 404.1513(a) and 20 C.F.R. 416.913(a)).

Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005). Under the treating physician rule, an ALJ must generally give more weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (superseded by statute on other grounds). In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) length and frequency of treatment relationship; (2) nature and extent of treatment; (3) supportability, consistency, specialization, and (4) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1-6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, 2011 WL 3273060, at 6 (D. Md. July 27, 2011). In addition, the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2).

The factors used to determine the weight to be accorded the opinions of physicians and psychologists ("acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level ("other sources"), including but not limited to licensed clinical social workers, chiropractors, and therapists. *See* SSR 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); see also 20 C.F.R. § 404.1513(d)(1). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of these "other sources" and the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6.

Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. SSR 06-03p, 2006 WL 2329939, at *5. Finally, not every factor for weighing opinion evidence will apply in every case. *Id.* The evaluation of an opinion from a medical source that is not an "acceptable medical source" depends on the particular facts in each case. *Id.* Thus, each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case. *Id.*

*Opinion of Dr. McAfee*

Plaintiff first contends that substantial evidence does not support the ALJ's decision because the ALJ failed to properly weigh the opinion of Dr. McAfee, Plaintiff's treating orthopedic surgeon.

Plaintiff was referred to Dr. McAfee on June 30, 2011. Upon evaluation of Plaintiff's spinal fractures, Dr. McAfee recommended that Plaintiff undergo surgery in the form of a decompressive laminectomy and multi-level fusion to treat Plaintiff's lumbar spondylolisthesis, lumbar spinal stenosis, and lumbar instability. On August 10, 2011, Plaintiff underwent the recommended surgery and, thereafter, Plaintiff's recovery was monitored by Dr. McAfee.

In his brief, Plaintiff points to three specific observations by Dr. McAfee regarding Plaintiff's use of a cane for support. Immediately following Plaintiff's operation, Dr. McAfee stated that, "[w]hile recovering from surgery, he will be unable to navigate the stairs in his home to use the bathroom. In addition, he will require additional support when walking." ECF No. 11 at 660. In a treatment note from November 17, 2011, Dr. McAfee opined that "[Plaintiff] is neurologically intact. He has grade 5/5 motor strength throughout. *He currently walks with a cane*, 5/5 positive Waddell signs. He can stand on his heels and on his toes." ECF No. 11 at 488 (emphasis added). Following Plaintiff's physical examination on August 21, 2012, Dr. McAfee again concluded that "[Plaintiff] has grade 5/5 motor strength throughout intact sensation he is objectively neurologically intact. The patient has bilateral hamstring tightness *he walks with a cane he can't walk more than 100 yards even in the best of circumstances*." ECF No. 11 at 670 (emphasis added).

With regard to these opinions, the ALJ reasoned that "[o]n a longitudinal basis, little weight is given to the August 11, 2011 opinion of Paul McAfee, M.D., as his opinion purported to only relate to the period immediately following the claimant's surgery during his post-surgical healing. Thus it does not address the claimant's functioning for more than the relatively brief post-operative period." ECF No. 11 at 32.

An ALJ must give specific weight to the opinion of a treating physician and must sufficiently explain the reasons for the weight given. *See* 20 C.F.R. § 404.1527(c)(2). Here, the ALJ properly articulated the reasoning for his decision to assign little weight to the opinion of Dr. McAfee. Indeed, Dr. McAfee's August 11, 2011 opinion that Plaintiff would need assistance with walking was rendered just one day after Plaintiff's operation.

In addition, the ALJ's decision contains extensive discussion of clinical findings and treatment records which the ALJ determined to be inconsistent with Dr. McAfee's conclusion that Plaintiff's condition warranted permanent use of a cane. *See* ECF No. 11 at 30-32. As the ALJ noted, "(Plaintiff) continued to complain of radicular pain warranting use of a cane [after surgery], but testing revealed no evidence for deep venous thrombosis and his follow-up examinations generally demonstrated full motor strength, normal reflexes, and intact sensation." ECF No. 11 at 30-31.

Inconsistency with other substantial evidence is a valid reason to accord less weight to a physician's opinion. *See Craig*, 76 F.3d at 590. Plaintiff's clinical examinations following his recovery generally supported the ALJ's findings, demonstrating that Plaintiff exhibited full motor strength, 5/5 muscle strength, normal reflexes, and intact coordination and sensation throughout. Subsequent physical examinations of Plaintiff in 2012 and 2013 again revealed limited range of lumbar motion and muscle spasm, but with full strength and intact sensation. The ALJ also noted that Plaintiff demonstrated the ability to stand for a longer period of time than originally claimed at his first functional capacity evaluation and that "this discrepancy demonstrates that the claimant's estimates of his exertional capacity are not particularly accurate." ECF No. 11 at 32. Therefore, the ALJ was not obligated to give Dr. McAfee's opinion controlling weight.

*Opinions of Dr. Seligman and Dr. Morris*

Plaintiff next contends that the ALJ failed to address the findings of Dr. Seligman, Plaintiff's treating psychologist and Dr. Morris, the state agency psychologist. Plaintiff's argument is meritless. The ALJ opinion directly cited to and discussed the findings of Dr. Seligman, noting that Plaintiff received:

> sporadic mental health treatment in 2011 and early 2012, consisting primarily of therapy sessions with a social worker for symptoms of anxiety and depression, along with a diagnosis of posttraumatic stress disorder (PTSD) and a Global Assessment Functioning (GAF) score of 50 (Exhibits 10F-10F/13F-14F). However, his symptoms were treated with medication, and his objective mental status examinations revealed normal orientation, good concentration, appropriate thought content, and average intelligence (Exhibits 13F/15F).

ECF No. 11 at 31. By late 2012, Plaintiff's GAF score had improved to 55 and Dr. Seligman's objective mental status findings revealed that Plaintiff continued to demonstrate good concentration, normal memory and orientation, normal eye contact, appropriate organization, and average intelligence. Contrary to Plaintiff's assertions, those findings were included in the ALJ's assessment of Plaintiff's RFC which supported a moderate social restriction.

Plaintiff's argument that the ALJ disregarded the opinion of Dr. Morris is equally without merit. In fact, the ALJ explicitly gave substantial weight to Dr. Morris's opinion that Plaintiff was "[m]oderately limited" in his ability to get along with co-workers or peers. Those findings were also reflected in the RFC assessment which stated that "[d]ue to [Plaintiff's] mental impairments and associated deficits in social functioning, he is limited to occasional and superficial interaction with co-workers." ECF No. 11 at 29. The Court also notes that Dr. Morris's conclusions do not support Plaintiff's contention that he was unable to work given that Dr. Morris explicitly concluded that Plaintiff was "Not Disabled." ECF No. 11 at 92. Therefore, Plaintiff's argument fails.

*Opinions of Mr. Martinez, Mr. Melberg, Ms. Kradel, and Dr. DiCrisio*

On January 9, 2014, at the recommendation of Dr. McAfee, Plaintiff underwent a Functional Capacity Evaluation conducted by physical therapist Carlos A. Martinez to assess both his baseline functional capacities as well as his ability to return to work. The findings of that evaluation demonstrated that Plaintiff experienced deficits with standing for extended periods, walking for extended periods, reaching, bending, climbing, squatting, and crawling. ECF No. 11 at 821. Testing also indicated part-time workplace tolerance, fair symptom management, low level symptom magnification, low-improvement potential as well as 5/5 lower extremity strength and intact neurological, sensory, and motor functions. *Id*. Mr. Martinez ultimately concluded that "[Plaintiff] did not demonstrate the functional capabilities to return to work in his previous position, or any other position at this time." *Id*. at 827.

On November 13, 2012, rehabilitation counselor Peter Melberg conducted a vocational assessment of Plaintiff. During that evaluation Plaintiff reported constant pain in the lower back, left hip, and left leg, an inability to bend or twist, sleep disturbances, anxiety and panic attacks, and limited ability to lift, carry, stand, walk, sit, and climb. ECF No. 11 at 281. As a result of those reports, Mr. Melberg concluded that "[Plaintiff] does not appear to be 'work ready' at this time. He has continued severe pain which limits his activity tolerance and affects his ability to attend and concentrate. Without a significant improvement in his activity tolerances and pain management, [Plaintiff] is unemployable and not placeable in the competitive workforce" *Id*. at 282.

Plaintiff additionally received long-term individual psychotherapy from mental health therapist Colleen Kradel. On December 10, 2013, Ms. Kradel reported that Plaintiff suffered from anxiety, panic attacks, difficulty maintaining focus and concentration, fatigue, hyper

vigilance, chronic insomnia, and difficulty sleeping. ECF No. 11 at 773. Ms. Kradel concluded

that "[a]s a result of his PTSD coupled with his physical injuries/challenges, [Plaintiff] has been

unable to work for at least a year. His disability is indefinite and his prognosis is guarded." *Id.*

On November 18, 2013, Chiropractor Michael DiCrisio conducted an examination of

Plaintiff. Dr. DiCrisio diagnosed Plaintiff with post-laminectomy syndrome, lumbar myalgia,

and lumbar radiculopathy and noted Plaintiff's symptoms included constant, chronic lower back

pain and weakness and pain in the left leg. ECF No. 11 at 767. In addition, Dr. DiCrisio opined

that Plaintiff could only sit for 15 minutes at a time and stand for 10 minutes at a time. *Id.* at 768-

769. He also determined that Plaintiff required the assistance of a cane and could never lift,

carry, twist, stoop, bend, crouch, squat, or climb. *Id.* at 769. Consequently, Dr. DiCrisio

concluded that Plaintiff's frequent pain and other symptoms were so severe that Plaintiff was

unable to work. *Id.* at 768-770.

The ALJ first assigned little weight to Mr. Martinez's findings, reasoning that:

> Neither of the FCE facilitators are acceptable medical sources, and both of their
> opinions are based on the claimant's abilities at a single point in time rather than
> over the course of a longitudinal treatment history. Moreover, the evaluations are
> not consistent with each other, and they both rely on the accuracy and reliability
> of the claimant's complaints, which are not found to be credible for the reasons
> discussed above.

ECF No. 11 at 33. The ALJ next assigned little weight to the opinions of Mr. Melberg and Ms.

Kradel, reasoning that:

> Neither of these parties is an acceptable medical source, and their conclusions that
> claimant could not work infringe upon an issue reserved to the Commissioner.
> Moreover, Mr. Melberg's assessment relied nearly exclusively on the claimant's
> subjective reports, and Ms. Kradel offered opinions based upon the claimant's
> physical conditions when she admittedly only treats the claimant for mental health
> issues.

ECF No. 11 at 33. Finally, in assigning little weight to Dr. DiCrisio's opinion, the ALJ reasoned that:

> [Dr. DiCrisio] is actually a chiropractor and therefore a non-acceptable medical source. Moreover it is unclear when the symptoms and signs he reports were present, as such findings are not supported in the objective medical evidence of record indicating normal strength, sensation, coordination, and reflexes.

ECF No. 11 at 32.

Plaintiff argues that the ALJ did not provide a sufficient explanation for rejecting the opinions of Mr. Martinez, Mr. Melberg, Ms. Kradel, and Dr. DiCrisio. The court disagrees. The reasons cited by the ALJ for discounting each opinion are factors properly considered in evaluating medical source opinions. Specifically, as previously discussed, medical source opinions may be discounted if objective medical evidence, as well as other relevant evidence, is not presented to support the opinions and the opinions are inconsistent with the record as whole. See 20 C.F.R. § 404.1527(c)(3) (supportability), (c)(4) (consistency). Medical source opinions may also be discounted when the source is a non-acceptable medical source, such as a physical therapists, psychotherapists, counselors, and chiropractors. SSR 06-03p, 2006 WL 2329939, at *5; *see* 20 C.F.R. § 404.1513(d)(1).

In addition, substantial evidence supports each reason cited by the ALJ for discounting the above sources. There is no dispute as to the occupations of Mr. Martinez, Mr. Melberg, and Ms. Kradel. With respect to the lack of supporting objective medical evidence, Mr. Martinez's findings were based primarily on Plaintiff's functional presentations and subjective reports of pain, the likes of which were called into question during Plaintiff's first functional capacity evaluation.[3] In addition, despite the Plaintiff's demonstrated physical limitations, the

---

[3] *See* ECF No. 11 at 820 ("He did not perform lifting tasks to evidence of maximum potential, limiting all tasks due to reports of pain. Therefore, Mr. Bogley;s performance should be

musculoskeletal findings in Mr. Martinez's records stated that Plaintiff demonstrated regular strength and intact sensory and motor functioning. ECF No. 11 at 821. Therefore, absent Plaintiff's subjective claims, the record does not show a basis upon which Mr. Martinez grounded his opinion. Likewise, Mr. Melberg and Ms. Kradel's findings appear to be based on Plaintiff's subjective reports about his condition rather than the objective medical evidence. Those deficiencies alone justify the ALJ's attribution of little weight to the conclusions of Mr. Martinez, Mr. Melberg, and Ms. Kradel.

As for Dr. DiCrisio's opinion, the ALJ accurately reasoned that "such findings are not supported in the objective medical evidence of record indicating normal strength, sensation, coordination, and reflexes." In fact, as stated previously, the objective medical evidence continuously revealed that, despite Plaintiff's reported symptoms, there were no significant deficits in strength, sensation, or motor functioning. Further, the ALJ's determination that it was "unclear when the symptoms and signs [Dr. CiCrisio] reports were present" is also supported by the record. Contrary to Plaintiff's claims, it is not clear that Dr. DiCrisio's opinion was based on a singular visit on November 18, 2013. *See* ECF No. 11 at 767 ("Frequency of Contact" section containing a single note from Dr. DiCrisio stating "[c]urrent visit only (Previously treated in 2010-2011)". Plaintiff is essentially asking this court to re-interpret evidence that was already assessed and weighed by the ALJ. This court is not permitted to undertake such an endeavor. *See Johnson*, 434 F.3d at 653 (a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ). Therefore, the Court finds that the ALJ's reasoning was supported by substantial evidence and Plaintiff's argument fails.

---

considered a representation of his current willingness to perform based on his subjective threshold and may not be a representation of his true maximum physical capabilities.")

*Opinion of Dr. Cohen*

On March 20, 2012, Plaintiff received an Independent Medical Evaluation from Mark A. Cohen, M.D. The findings of that evaluation demonstrated that Plaintiff continued to have back pain extending into the left leg and used a cane to ambulate. ECF No. 11 at 700. Dr. Cohen additionally indicated that Plaintiff could only sit for 15 minutes and stand for 5 minutes. *Id.* Dr. Cohen ultimately determined that "[Plaintiff] had 13% impairment for loss range of motion […], 13% impairment for a two level fusion […], and an additional 15% impairment for radiculopathy […] for a total of 41% impairment to the lumbar spine." *Id.* at 701. With regard to Dr. Cohen's findings, the ALJ determined that:

> Little weight is further given to Dr. Mark Cohen's assigned "impairment" percentages, terminology without meaning within Social Security disability analysis and to the extent it represents a[n] opinion that the claimant is "disabled", it infringes upon an issue reserved to the Commissioner.

ECF No. 11 at 33.

Plaintiff argues that the ALJ did not provide a sufficient explanation for rejecting the opinions of Dr. Cohen. The court disagrees. The reasons cited by the ALJ for discounting Dr. Cohen's opinion are factors properly considered in evaluating medical source opinions. Medical source opinions may be discounted if objective medical evidence, as well as other relevant evidence, is not presented to support the opinions and the opinions are inconsistent with the record as whole. See 20 C.F.R. § 404.1527(c)(3) (supportability), (c)(4) (consistency). As the ALJ stated, it is unclear whether Dr. Cohen's assigned "impairment" percentages supported a disability determination or not, however, Dr. Cohen's own objective medical findings indicated that Plaintiff's lumbar spine revealed no instability, that his fusion and spacers were "in good position," and that he was at maximum medical improvement. *See* ECF No. 11 at 701. Moreover, as stated previously, additional objective evidence in the record revealed that Plaintiff had full

motor strength, 5/5 muscle strength, normal reflexes, and intact coordination and sensation. Therefore, assuming arguendo that Dr. Cohen's opinion supported a disability determination, his decision was contradicted by the objective medical evidence in his own reports and elsewhere in the medical record. Therefore, the ALJ was justified in assigning little weight to the opinion of Dr. Cohen.

## B. The New Evidence Submitted to the Appeals Council Does Not Warrant Remand

Plaintiff contends that the June 3, 2014 letter (hereinafter "the 2014 letter") (R. 669-70) submitted to the Appeals Council from Plaintiff's treating physician Dr. Paul C. McAfee, M.D. warrants remand of this case. Defendant argues that remand is not necessary because the 2014 letter does not constitute "new and material" evidence and because the ALJ's decision was supported by substantial evidence.

When a claimant requests review of an ALJ's decision by the Appeals Council, the regulations permit submission of additional evidence not previously before the ALJ. See 20 C.F.R. §§ 404.968, 404.970(b). In such cases, the Appeals Council should first determine whether the submission constitutes "new and material" evidence that "relates to the period on or before the date of the [ALJ's] hearing decision." *Id.* § 404.970(b). If the submission constitutes new and material evidence, the Appeals Council should evaluate the entire record including the new and material evidence. *Id.*

Following that evaluation, the Appeals Council must then determine whether to grant review of a claimant's case. If it finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently in the record," review should be granted. *Id.* If however, the Appeals Council finds that the ALJ's "action, findings or conclusion is not contrary to the weight of the evidence currently in the record," it can deny the request for review. *Meyer v.*

*Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). It is the role of this court to review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. *Id.* at 704.

### Dr. McAfee's June 2014 Letter

There is no dispute over the substance of Dr. McAfee's June 2014 letter. Dr. McAfee has been Plaintiff's treating physician since August 2011. Dr. McAfee reviewed Plaintiff's medical records and noted that Plaintiff had previously undergone decompressive laminectomy and spinal fusion. Dr. McAfee further noted several MRI's and CT Scans evidencing Plaintiff's bilateral pars interarticular fractures at L5-S1. Dr. McAfee asserted that the administered epidural injections and various pain medications had not assisted with Plaintiff's resulting pain and that Plaintiff had difficulty tolerating medication. Dr. McAfee additionally observed that Plaintiff used a cane for support, had pain when sitting or standing for prolonged periods, and experienced pain in the neck, leg, and lumbar region with severe pain in the lower back. Dr. McAfee determined that Plaintiff could only stand for 2 hours per workday and would be absent from work for four or more days per month due to his condition. As a result, Dr. McAfee concluded that Plaintiff's medical condition and resulting symptoms prevented him from working.

### Dr. McAfee's Letter is Not "New and Material" Evidence

Although the Appeals Council specifically incorporated the 2014 letter into the record, it did not specifically determine whether it considered the letter to be "new" and "material." Evidence is "new" where it is not duplicative or cumulative to the evidence already presented to the ALJ. *Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Evidence is "material" where there is a reasonable possibility that it would have changed the outcome of the Commissioner's decision. *Id.*

After careful review of the record the court finds that the 2014 letter is not new or material. Much of the letter merely restates what is in Dr. McAfee's prior treatment records of Plaintiff from 2011 through 2013. There is nothing presented in the 2014 letter that is factually new to the record as a whole. Instead, the 2014 letter remains consistent with Dr. McAfee's previous treatment notes and simply summarizes information that was already presented to the ALJ at Plaintiff's original hearing:

1. *See* ECF No. 11 at 495 (August 2, 2011 treatment records stating "[i]n my opinion the patients pain, bilateral leg pain and back pain, are so severe that he cannot sit down" and noting "[e]pidural injections have not been useful in alleviating his pain. He has tried physical therapy, heat, ice, injections, sacroiliac joint blocks, spinal nerve root blocks. He has tried Vicodin, Dilaudid, Flexeril, Xanaflex, Klonopin, Ibuprofen and Aleve.")

2. *See* ECF No. 11 at 489 (October 3, 2011 treatment records noting "[Plaintiff] is continuing to have a great deal of pain throughout the lumbrosacral region" and stating that Plaintiff suffers from "Paresthesia mostly exacerbated with sitting, especially in a reclined position. In addition, he notes his L leg gives out occasionally throughout the day."

3. *See* ECF No. 11 at 488 (December 22, 2011 treatment records indicating "[w]e did a bilateral decompressive laminectomy and fusion using pedicle instrumentation L4, L5, and S1. We used an insert and rotate spacer at L5-S1; this has gone on to a solid fusion. He was having increasing back pain so we sent him in for some injections and he took one injection and this has laid him up and he now requires ambulation with a cane.").

4. *See* ECF No. 11 at 670 (August 21, 2012 treatment records noting "The [Plaintiff] has bilateral hamstring tightness he walks with a cane and can't walk more than 100 yards even in the best of circumstances.").

Furthermore, the record is replete with treatment records identifying Plaintiff's changes in medications and continued experience of pain. Therefore, the Court finds remand is not appropriate in this case because the evidence is cumulative and there is not a reasonable

possibility it would change the outcome of the Commissioner's decision. Moreover, even if the Court were to find a portion of the 2014 letter to be new and material, which it does not, the letter does not disturb the conclusion that the ALJ's decision is supported by substantial evidence. *See Smith v. Charter*, 99 F.3d 635 (4th Cir. 1996) (concluding substantial evidence supported the ALJ's findings.)

Lastly, Plaintiff's case is distinguishable from *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). *In Meyer*, the Fourth Circuit remanded where new evidence presented to the Appeals Council constituted the only evidence on record as to the opinion of the claimant's treating physician. In the present case, however, the 2014 letter simply repeats evidence already before the ALJ. Consequently, the ALJ's decision already considered the treating physician's observations because the information contained in the 2014 letter was cumulative to Plaintiff's previous medical records from the same treating physician and the letter does not serve to fill an existing evidentiary gap as was the case in *Meyer*. Therefore, the court finds that the 2014 letter does not warrant remand.

## C. The ALJ properly relied on the testimony of the Vocational Expert at step five of the sequential evaluation.

Plaintiff contends that the Vocational Expert (hereinafter "the VE") relied upon by the ALJ was unqualified because his resume reflected no experience in the placement of disabled individuals in jobs. Plaintiff's claim is meritless. The VE's resume explicitly elaborates on his accomplishments in the "development, coordination, and implementation of vocational services for the disabled, post-injury individuals and school students." ECF No. 11 at 193. Moreover, the VE's credentials include: (1) Certified Vocational Evaluator from the Commission on Rehabilitation Counselor Certification; and (2) Approved Vocational Expert with the United States Social Security Administration and the U.S. Railroad Retirement Board. *Id.* The VE's

resume additionally demonstrates extensive professional experience in vocational consulting and evaluation. *Id.* Therefore, Plaintiff's claim fails.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 7 Oct 2016

A. David Copperthite
United States Magistrate Judge